[Civ. No. 2977. Fifth Dist. Mar. 22, 1977.]

In re the Marriage of EDNA FAYE and JOSEPH ALLEN DAVIS,
EDNA FAYE DAVIS, Respondent, v.
JOSEPH ALLEN DAVIS, Appellant;
ETHEL L. DAVIS, Appellant.

**COUNSEL**

Joseph Allen Davis, in pro. per., for Appellant Husband.

Guy Knupp, Jr., for Appellant Mother.

William A. Hill for Respondent.

**OPINION**

**LORING, J.**\*—These appeals are presented on the clerk's transcript without a reporter's transcript or an agreed statement of facts.

On November 4, 1974, Edna Faye Davis (Edna) filed a petition for dissolution of her marriage to Joseph Allen Davis (Joseph) which occurred on December 22, 1960. The parties separated November 4, 1974. There were two children of the marriage. In her petition, Edna alleged under the heading of "Community Property" that "Title to the real property situated at 69 South Cottage, Porterville (residence) is vested in the parents of petitioner and the nature and extent of the parties' interest, is in question."

---

\*Assigned by the Chairman of the Judicial Council.

On April 17, 1975, Edna filed a notice of motion for an order joining Ethel L. Davis (Ethel) and Nora V. Jones (Jones) as parties because "Each of the above parties hold legal title to real property for the convenience purpose only, said property being in fact the community property of the parties hereto." The notice of motion also alleged:

"(State facts showing that it would be appropriate for the court to determine the particular issue in the proceeding)

"The above entitled matter came before the Court for trial on the 11th day of April, 1975, at which time it was disclosed to the Court that ETHEL L. DAVIS, mother of Respondent, held legal title to certain community real property, and NORA V. JONES, mother of Petitioner, held title to other community real property. It is necessary that the Court determine the rights if any, of these proposed parties by joinder.

"(State facts showing that each person sought or seeking to be joined is either indispensable to a determination of a particular issue or necessary to the enforcement of any judgment rendered on the issue)

"That due to the holdings of title by the respective mothers of the parties it is indispensable to the enforcement of any judgment rendered on the issue of community property rights between the parties that they, the said respective mothers, ETHEL L. DAVIS and NORA V. JONES be joined herein as parties Respondent."

The aforesaid notice used a partially printed form of document bearing the legend: "Form adopted by Rule 1291.10 of Judicial Council of California effective January 1, 1972."

On April 30, 1975, Edna filed a second amended petition for dissolution of marriage in which she joined Ethel L. Davis and Nora V. Jones as additional parties. In that petition Edna alleged inter alia:

"☒ The following described property is subject to disposition by the court in this proceeding:

1. Equity in residence located at 69 So. Cottage, Porterville, California, together with furniture, appliances and misc. personalty.

2. Real property located at 1196 E. Springville Dr., Porterville, California, approximately 2 acres. . . .

"4. Petitioner requests that the following described property be confirmed as petitioner's separate property:

Petitioner requests that the Court make its order and Judgment against any and all claims asserted by Ethel L. Davis and Nora V. Jones with respect to the real properties of the parties set forth and described hereinabove at Paragraph 3, Subparagraphs 1 and 2. Petitioner alleges that any holding of said properties by the said Respondents by Joinder herein was and is for convenience only and that neither of said parties has or ever had either legal or equitable title therein.

"5. Petitioner requests that:

f. [x] That the claimed interests of the parties hereto by Joinder be declared as held for convenience only and title in fee vested in the parties Petitioner and Respondent herein."

Ethel appeared in the proceeding and alleged, inter alia, that the Springville Drive property was "originally acquired by this respondent and by Robert L. Davis, her late husband, as joint tenants" and upon his death title vested in her. She alleged that she is now the owner in fact as well as of record.

After trial, the court filed a written announcement of intended decision in which it declared inter alia:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Court finds as a fact that Petitioner's mother, Nora V. Jones, held title to the property known as 69 South Cottage for convenience only; that she has no fiscal interest in said property; and said Nora V. Jones is ordered to immediately sign a grant deed or a quit claim deed to Petitioner and Respondent as their community property. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Court finds as a fact that Respondent's mother, Ethel Davis, held title to the property known as 1196 East Springville for convenience only, and said Ethel Davis is ordered to immediately sign a grant deed or quit claim deed to Petitioner and Respondent as their community property; provided, however, that the Court expressly orders that said Ethel Davis shall have a lien in the sum of $4,000 on said property payable by the Respondent to said Ethel Davis.

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that in order to equalize the difference in the award of community property, the property at 1196 East Springville, Porterville, California, shall be sold for the best price obtainable within a period of ninety (90) days. From the proceeds of said sale, the $4,000 due and owing to Ethel Davis shall be paid to her forthwith, and Petitioner shall receive the sum of $5,178, to equalize the division of community property award hereinabove made."

An interlocutory decree of dissolution was entered accordingly. Ethel and Joseph filed notices of appeal from the judgment.

## ISSUES

Ethel and Joseph[1] filed a joint brief on appeal in which they define the issues on appeal as follows:

## POINTS ON APPEAL

This appeal is taken on two grounds, the first of which is relied upon by both appellants, and the second by the appellant Ethel L. Davis.

These are:

1. That the court exceeded its statutory authority, sitting as a domestic relations court, in ordering the sale of the property.

2. That the court exceeded both such statutory authority and its jurisdiction in bringing in the two mothers as additional parties and in converting a petition for dissolution of marriage, in effect, into an action to try title to real property.

## DISCUSSION

We first consider the second issue raised by Ethel namely that the trial court had no jurisdiction to declare that the Springville property was community property of the parties and that Ethel held title for convenience only. Ethel contends that a superior court sitting in a dissolution of marriage proceeding is a statutory court only and has no

---

[1] Apparently the same lawyer originally represented both Ethel and Joseph at the trial level, but he was substituted out and Joseph was substituted in propria persona on the day Ethel filed her notice of appeal.

authority except that conferred by statute. The problem thus presented is not unlike the question of the jurisdiction of a probate court which is also a statutory court of limited jurisdiction. In *Estate of Baldwin* (1943) 21 Cal.2d 586 [134 P.2d 259], the court was confronted with a situation in which a divorce court had appointed a receiver for an absconding husband's property. One of his assets was an interest in the estate of his mother. The receiver, as successor in interest, filed a petition for ratable distribution in the mother's probate proceedings in order to collect the husband's share of his mother's estate which petition was denied by the trial court. The Supreme Court reversed saying: "While probate proceedings are purely statutory and the superior court is circumscribed in such matters by the provisions of the Probate Code conferring jurisdiction (*Estate of Davis*, 136 Cal. 590, 597 [69 P. 412]; *Texas Company* v. *Bank of America*, 5 Cal.2d 35, 39 [53 P.2d 127]), the proceeding instituted by appellant as receiver was such as is contemplated by the express language of said section 1010. The fact that such court is acting in probate when required to apply rules in equity or principles of law to decide a question demanding settlement does not affect its jurisdiction to do so. As a probate court in determining issues arising in connection with the administration of an estate, 'it may bring to its aid the full equitable and legal powers with which, as the superior court, it is invested.' (*Estate of Bell*, 168 Cal. 253, 257 [141 P. 1179].) When the superior court has jurisdiction of the subject-matter of a case falling within either equity or law, it has power to hear and determine, in the mode provided by law, all questions of law and fact, the disposition of which is ancillary to a proper judgment. It has the same power sitting in probate. (*Burris* v. *Kennedy*, 108 Cal. 331, 336 [41 P. 458].) In line with these settled principles, there can be no doubt as to the jurisdiction of the probate court to adjudicate the controversy as presented with regard to the petition for ratable distribution. . . ." (*Id.*, at pp. 593-594.) ·

■ In our view a divorce court sitting in a dissolution proceeding is in substantially the same position. It is a court of limited jurisdiction—that is to say, it can exercise jurisdiction only over the subject matter authorized by law, i.e., the marital res and the property owned by the marital res; and it can acquire jurisdiction of that subject matter only in the manner prescribed by law. But once the court has acquired jurisdiction over the subject matter as defined by law in the manner prescribed by law, " 'it may bring to its aid the full equitable and legal powers with which, as the superior court it is invested' " and which is necessary or appropriate to the discharge of its jurisdiction over that subject matter. (*Estate of Baldwin*, *supra*, 21 Cal.2d at p. 594.)

■  Since this case is presented to us on the clerk's transcript alone, we are, in accordance with the established rules governing appeals, required to indulge in all presumptions necessary to support the judgment of the trial court and to presume that the record presented includes all matters material to a determination of the points on appeal. (6 Witkin, Cal. Procedure, §§ 235-238, pp. 4225-4230.) Appellant has the burden of demonstrating error. (*Woolford* v. *Denbow* (1963) 216 Cal.App.2d 200, 203 [30 Cal.Rptr. 794].)

■  If it is true as alleged and presumably proved by Edna that the Springville property was community property of Edna and Joseph and title was being held by Ethel "for convenience only," then when the court acquired jurisdiction of the marital res and the community property owned by the marital res, it acquired jurisdiction to determine whether or not Edna's allegations were true. The only limitation was the safeguarding of Ethel's right to due process of law. When she was given notice and a right to be heard, her due process rights were satisfied.

When the dissolution of marriage act was first enacted in 1969, section 4540, read: "Any judgment, order, or decree of the court made or entered pursuant to this part may be enforced by the court by execution, attachment, the appointment of a receiver, contempt, or by such other order or orders as the court in its discretion may from time to time deem necessary."

Civil Code section 4800[2] obligates the court in a dissolution proceeding to divide the community property equally. A 1970 amendment to the section removed all doubt about the jurisdiction of the court and expressly gave the court power to "make such orders as it deems necessary to carry out the purposes of this section." (Civ. Code, § 4800, subd. (d).) Clearly where it is contended that a third person holds title to community property for convenience only without any valid interest therein, the court could not make an appropriate division of community property and properly discharge its statutory duty without first determining the question of whether or not the community property includes the property to which title is being held by a third person. So long as the property and the persons claiming title thereto were within the territorial jurisdiction of the court, as is true in the case at bar, the question is not a question of jurisdiction, but a question of due process.

---

[2]Civil Code section 4800 reads:
"(a) Except upon the written agreement of the parties, or on oral stipulation of the parties in open court, the court shall, either in its interlocutory judgment of dissolution of

Prior to the adoption of the dissolution of marriage act in 1969, the divorce court was a court of statutory jurisdiction but it nevertheless had jurisdiction to determine questions of title to real property.

In *Elms* v. *Elms* (1935) 4 Cal.2d 681 [52 P.2d 223, 102 A.L.R. 811], third parties (adult children of the spouses) sought to intervene in a divorce case to claim an interest in real property which the wife claimed was community property. The trial court denied the motion to intervene. The Supreme Court reversed stating: "It is stated generally that the husband and wife are the only parties to an action for divorce. However, *the right of the wife to name as a defendant a third person to whom the husband has conveyed community property or separate property in fraud of her rights has been recognized in several cases in this state. (Kashaw* v. *Kashaw,* 3 Cal. 312, 322; *Cummings* v. *Cummings,* 75 Cal. 434, 442 [17 Pac. 442]; *Weyer* v. *Weyer,* 40 Cal.App. 765, 768 [182 Pac. 776]; *Warner* v. *Warner,* 100 Cal. 11 [34 Pac. 523]; *California Filter Co.* v. *Superior*

the marriage, in its judgment decreeing the legal separation of the parties, or at a later time if it expressly reserves jurisdiction to make such a property division, divide the community property and the quasi-community property of the parties, including any such property from which a homestead has been selected, equally.

"(b) Notwithstanding subdivision (a), the court may divide the community property and quasi-community property of the parties as follows:

"(1) Where economic circumstances warrant, the court may award any asset to one party on such conditions as it deems proper to effect a substantially equal division of the property.

"(2) As an additional award or offset against existing property, the court may award, from a party's share, any sum it determines to have been deliberately misappropriated by such party to the exclusion of the community property or quasi-community property interest of the other party.

"(3) If the net value of the community property and quasi-community property is less than five thousand ($5,000) and one party cannot be located through the exercise of reasonable diligence, the court may award all such property to the other party on such conditions as it deems proper in its final judgment decreeing the dissolution of the marriage or in its judgment decreeing the legal separation of the parties.

"(c) Notwithstanding the provisions of subdivision (a), community property personal injury damages shall be assigned to the party who suffered the injuries unless the court, after taking into account the economic condition and needs of each party, the time that has elapsed since the recovery of the damages, and all other facts of the case, determines that the interests of justice require another disposition. In such case, the community property personal injury damages shall be assigned to the respective parties in such proportions as the court determines to be just, except that at least one-half of such damages shall be assigned to the party who suffered the injuries. As used in this subdivision, 'community property personal injury damages' means all money or other property received by a married person as community property in satisfaction of a judgment for damages for his or her personal injuries or pursuant to an agreement for the settlement or compromise of a claim for such damages, unless such money or other property has been commingled with other community property.

"(d) The court may make such orders as it deems necessary to carry out the purposes of this section."

*Court*, 97 Cal.App. 99, 104 [274 Pac. 1012]; *Callnon* v. *Callnon*, 7 Cal.App.2d 676 [46 Pac.2d 988].) In an action for divorce the court not only severs the marital tie, but divides the community property, and makes provision for the support of the wife. We regard the above cases as establishing the rule that either party to the divorce action may bring in third parties claiming an interest in property alleged to be community, and adjudicate the claims of such parties in the divorce action. We are further of the view that if neither party to the divorce action names as defendants the third parties who claim rights in property alleged to be community, such parties may intervene themselves in the divorce action and establish their rights.

"There are sound reasons in policy why the court in an action for divorce should be permitted to adjudicate the rights of third parties in property alleged by one or both of the spouses to be community property. One of the duties of the court sitting as a court of equity in a divorce proceeding is to make an equitable distribution or award of community property, and to provide for the support of the wife. The court can scarcely make a fair distribution or allotment of parcels of community property without determining what property is community. If property alleged by one of the spouses to be community is in fact in whole or in part claimed by third persons, the court should determine as between the spouses whether the property is community, or owned by third persons. If a third party claimant cannot be made a party and his rights adjudicated, it may be held in a separate action brought by or against such claimant that he is the owner of the property, with the result that a division of all community property made between the spouses in the divorce action, based on a determination that certain property was owned by them, will be rendered inequitable as between them.

"The question as to whether alimony should be awarded and the amount thereof may also depend upon the existence of community property and the disposition made thereof. If the third party claimant is not brought into the divorce action, property treated as community property in the divorce action may subsequently in a separate suit be adjudged as against the spouse to whom it was awarded in the divorce action to be the property of such claimant. This may be followed by an application under section 139 of the Civil Code for an increase in alimony, on the ground that the judgment in favor of the third party removed a source of income. If the rights of the third party are determined in the divorce action, not only will a separate action to determine the rights of such party be avoided, but also a possible

proceeding for modification of the alimony allowance will not be necessary.

"If neither party to a divorce action brings in a third party claimant he should be permitted to intervene. The state has an interest in marriage and divorce and favors an orderly disposition of the action, including the determination of the property rights of the parties. The law abhors multiplicity of actions, consuming the time of the court and entailing additional expense to the people. It is to the interest of the people, as well as the parties particularly involved, that there be an end of litigation. *Interest reipublicae ut sit finis litium.* A claimant to property alleged in the divorce action to be community, has an interest in the matter in litigation and an interest against both spouses in property alleged by either of them to be community property of the marriage. Section 387 of the Code of Civil Procedure authorizes an intervention as follows: 'At any time before trial, any person who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding. . . .' A claim to or lien upon the property which is the subject of the litigation generally gives a right to intervene. (*Stich* v. *Goldner,* 38 Cal. 608; *Coffey* v. *Greenfield,* 55 Cal. 382; *Cummings* v. *Cummings,* 55 Cal.App. 433 [203 Pac. 452]; 20 Cal.Jur. 520.) In the instant case the real property in which interveners claim an interest is before the court upon plaintiff's prayer that all community property be set aside to her. The fact that the interveners may protect their interests by bringing a separate action does not defeat their right to intervene. (20 Cal.Jur. 521, and cases there cited.)" (Italics ours.) (*Id.,* at pp. 683-685.)

The adoption of the dissolution of marriage act in 1969 did not change the law in this respect. In *Severdia* v. *Alaimo* (1974) 41 Cal.App.3d 881 [116 Cal.Rptr. 405], the trial court, on August 10, 1971,[3] ordered certain third persons joined as parties to a divorce action. The third parties, Mr. and Mrs. Eterovich, intervened and claimed title to a promissory note secured by a trust deed on certain real property. The court held that the promissory note and trust deed were without consideration and ordered the property sold and the proceeds divided between the spouses. The wife's share of the proceeds came into the possession of the wife's lawyer, Alaimo, who claimed a lien thereon. The court issued an order to show cause directing the lawyer to appear. He did so and denied that the court

---

[3]The action was filed on October 21, 1969, before the effective date of the act which became effective January 1, 1970. However, the case was tried after the effective date of the act.

had jurisdiction. The trial court concluded that it had jurisdiction and ordered the lawyer to pay the money to the wife. The Court of Appeal affirmed stating:

"In the light of *Spencer* [*Spencer* v. *Spencer* (1967) 252 Cal.App.2d 683 (60 Cal.Rptr. 747)] and the circumstances of the instant case we conclude that the court below had jurisdiction to adjudicate the rights of Alaimo in the subject funds and that it acquired jurisdiction over him for purposes of such adjudication by the issuance of the order to show cause. By asserting a lien Alaimo in essence claimed an interest in the property of a party to the dissolution of marriage proceeding. The trial court had found that certain funds were the community property of Mrs. Severdia and her husband and that therefore they were subject to the disposition of the court in the dissolution proceeding. The court in its findings of fact and conclusions of law ordered that said funds should be divided equally between Mrs. Severdia and her husband and that the trustee who was holding such funds should deliver them to their respective attorneys. In its interlocutory judgment dissolving the marriage the court specifically ordered that the subject funds be divided equally between the parties. A subsequently executed stipulation and the 'Order for Disbursement of Funds' predicated thereon provided, in relevant part, that 'Russell Green [the trustee] *will disburse* said funds: . . . One Quarter (¼) thereof to Petitioner WINNIE ANN SEVERDIA and JOHN C. ALAIMO, her Attorney, . . .'" (Italics added.) This order made subsequent to the interlocutory judgment did not purport to adjudicate that Mrs. Severdia and Alaimo were the owners of said funds. It was merely an order to the trustee to deliver Mrs. Severdia's community property share of the subject proceeds to Mrs. Severdia and Alaimo. This direction was similar to that made in the order which adjudicated Mrs. Severdia's interest in said funds.

"As observed in *Spencer*, '. . . it would be incongruous . . . to hold that a third party whose claim to property involved in a divorce action may be made a party to the action in order to adjudicate his rights therein even though his claim may have arisen independently before the divorce action, but that the court has no jurisdiction to bring in a person who acquired a claim to the property during actual litigation as a trustee.' (252 Cal.App.2d at p. 688.)" (41 Cal.App.3d at pp. 888-889.)

In the light of the decision in *Severdia* v. *Alaimo, supra,* it seems clear that there is no basis for suggesting that the 1969 dissolution of marriage act was intended to deprive the divorce court of the power which it

previously had to determine title to community property claimed by the parties to an action for dissolution of marriage merely because it is necessary to join third parties in order for the court to do so.

It is manifest that the claim of Ethel that the court had no jurisdiction to try title to the Springville property as an incident to the dissolution of marriage proceeding is devoid of merit. We hold that the court had such jurisdiction.

■ Since we conclude that the court had jurisdiction to declare that the Springville property was community property belonging to the marital res of Edna and Joseph and that Ethel held title thereto for convenience only, Ethel may not complain that the court ordered the property sold and the proceeds of sale divided. Since she had no interest in the property Ethel is not a party aggrieved by the order for the sale of the property. An appellant may not complain about alleged error which affects only other parties. (*Kristovich* v. *Crail* (1971) 18 Cal.App.3d 589, 591 [96 Cal.Rptr. 207]; *Mulder* v. *Mendo Wood Products, Inc.* (1964) 225 Cal.App.2d 619, 634 [37 Cal.Rptr. 479]; *Estate of Nepogodin* (1955) 134 Cal.App.2d 161, 173 [285 P.2d 672].)

■ We next consider Joseph's contention that the divorce court did not have jurisdiction to order that the real property (Springville property) which it found to be community property should be sold and the proceeds divided as provided in the order. The court found that it was necessary to order the property sold "in order to equalize the difference in the award of community property." As previously noted, this appeal is on the clerk's transcript alone and we, therefore, presume that the preponderance of evidence supported the court's finding regarding necessity. This case does not involve any question regarding abuse of discretion, but attacks only the court's jurisdiction, power and authority.

As we have already noted, Civil Code section 4800 obligates the trial court to make an equal division of community property in a dissolution of marriage proceeding and subdivision (d) thereof grants the court power and authority to "make such orders as it deems necessary to carry out the purposes of this section." We hold that that grant of power alone is sufficient to give the court jurisdiction to order a sale of the community property including community real property when, in the exercise of a sound judicial discretion, the court concludes that it should do so in order to accomplish an equal division of the community property. It

would be unreasonable and wholly inappropriate to limit the court to awarding undivided interests in property (even when that could be done) and then compel the parties to file a new and independent action for partition when the same result can more easily and readily be accomplished in the dissolution proceeding. In *In re Marriage of Boseman* (1973) 31 Cal.App.3d 372, 377-378 [107 Cal.Rptr. 232], the trial court ordered a sale of community real property (the family residence) at a remote future date and the appellate court reversed, not because the court did not have power to order a sale, but because it had not made adequate provision for appreciation and maintenance.

In *In re Marriage of Knickerbocker* (1974) 43 Cal.App.3d 1039, 1048 [118 Cal.Rptr. 232], the court said that ". . . the trial court has the obligation of making the property division meaningful to the parties and capable of terminating the residual property bond which subsists as an unwelcome vestige of the dissolved marriage." In some cases, as in the case at bar, the division of community property can only be "meaningful" and capable of terminating the residual property bond if the property is sold, and the proceeds divided as directed by the court. A distribution "in kind" would not be "meaningful" and would not terminate the residual property bond. We do not hold that the court in the exercise of a sound judicial discretion cannot order a distribution in kind. That question is not before us on this appeal.

We note that in the same year that the Legislature added subdivision (d) to Civil Code section 4800, it also added section 4800.5[4] to the Civil Code which expressly defines the exercise of jurisdiction over community property which is beyond the territorial jurisdiction of the court. The

[4]Civil Code section 4800.5 reads:

"(a) Except as provided for in subdivision (b), if the property subject to division under Section 4800 includes real property situated in another state, the court shall, if possible, divide the community property and quasi-community property in accordance with Section 4800 in such a manner that it is not necessary to change the nature of the interests held in the real property situated in the other state.

"(b) If it is not possible to divide the property in the manner provided for in subdivision (a), the court may do any of the following in order to effect a division of the property in accordance with Section 4800:

"(1) Require the parties to execute such conveyances or take such other actions with respect to the real property situated in the other state as are necessary.

"(2) Award to the party who would have been benefited by such conveyances or other actions the money value of the interest in such property that he would have received if such conveyances had been executed or other actions taken.

(Added by Stats. 1970, ch. 312, § 2, p. 707.)"

comment of the Law Revision Commission[5] clearly states that the court exercising in personam jurisdiction over the parties could order them to sell property beyond the territorial jurisdiction of the court when necessary or appropriate to the discharge of its obligation under Civil Code section 4800 to make an equal division of the community property. It would be incongruous for the court to have greater power over community property beyond its territorial jurisdiction than it has over community property within its territorial jurisdiction.

For all the reasons stated, we conclude that the superior court, sitting in a dissolution of marriage proceeding, does have jurisdiction to order

---

[5]The comment reads as follows:

"Section 4800.5 has been added to specify the procedure to be followed when the property subject to division under Section 4800 includes real property situated in another state.

"When real property is acquired in another state with community funds, the property is treated as community property for the purpose of division on dissolution of the marriage or on legal separation. See Rozan v. Rozan, 49 Cal.2d 322, 317 P.2d 11 (1957); Tomaier v. Tomaier, 23 Cal.2d 754, 146 P.2d 905 (1944); Recommendation Relating to Quasi-Community Property, 9 Cal.L. Revision Comm'n Reports 113, 119 n. 12 (1969). Quasi-community property likewise may include real property situated in another state. See Section 4803; Recommendation Relating to Quasi-Community Property, 9 Cal.L. Revision Comm'n Reports 113 (1969).

"Section 4800.5 recognizes that the judgment of the court dividing the property cannot directly affect real property in another state, even though the court has jurisdiction in personam over both spouses, unless the judgment is allowed that effect by the laws of the state in which the property is situated. Fall v. Eastin, 215 U.S. 1 (1909); Rozan v. Rozan, 49 Cal.2d 322, 317 P.2d 11 (1957); Taylor v. Taylor 192 Cal. 71, 218 P. 756 (1923). On the other hand, where the court has jurisdiction in personam over both parties, it may order one of the parties to execute a deed by acting in personam; if the person so ordered does execute the deed, it effectively conveys the interest transferred, even though executed under threat of contempt proceedings. Fall v. Fall, 75 Neb. 104, 113 N.W. 175 (1907), aff'd, Fall v. Eastin, 215 U.S. 1 (1909).

"Section 4800.5 requires that the court first attempt to effect the equal division of the community property and quasi-community property required by Section 4800 without making any change in the nature of the interests held in the real property situated in the other state. This will be the result where the value of the other community and quasi-community property is equal to or exceeds the value of the real property situated in the other state that is subject to division. Where the court determines that the real property situated in another state or an interest in such property must be transferred from one party to the other to effect the equal division of community and quasi-community property required by Section 4800, the court may order the parties to execute the necessary conveyances or to take such other actions—such as selling the property and including the proceeds in the property division—as may be necessary to effect an equal division of the community and quasi-community property and may enforce its order by contempt proceedings. If a party refuses to execute the instrument necessary to effect the transfer or sale of the property or to take some other necessary action, the problem may be dealt with by awarding the money value of the property or interest therein to the other party, which award must be given full faith and credit. Fall v. Fall, 75 Neb. 104, 113 N.W. 175 (1907), aff'd, Fall v. Eastin, 215 U.S. 1 (1909)." (Law Revision Com. Comment (1970 Addition).)

the sale of community property, including community real property, where such sale is necessary or appropriate to the discharge of its obligations under Civil Code section 4800.

The judgment is affirmed.

Brown (G. A.), P. J., and Gargano, J., concurred.