In re William R. SMITH, Debtor.

Carol Sue Smith, Plaintiff,

v.

William R. Smith, Defendant.

Bankruptcy No. 97–26738–B–7.
Adversary No. 97–2634.

United States Bankruptcy Court,
E.D. California,
Sacramento Division.

Dec. 30, 1998.

Dennis K. Cowan, Redding, California, for plaintiff.

Byron Lee Lynch, Redding, California, for defendant.

## MEMORANDUM DECISION

MICHAEL S. McMANUS, Bankruptcy Judge.

A trial of this adversary matter was held on August 28, 1998. Plaintiff Carol S. Smith appeared with Dennis K. Cowan, Esq., and debtor and defendant William Roy Smith appeared with Byron Lee Lynch, Esq. Having considered the evidence and written and oral arguments, as well as the proposed findings of fact and conclusions of law lodged on November 25, 1998, the court concludes the obligations of the debtor to the plaintiff are nondischargeable in bankruptcy.

### I. Facts

The parties are separated spouses. Prior to the filing of the debtor's chapter 7 petition, the superior court entered a judgment of legal separation on January 6, 1997. That judgment also preliminarily divided the community property of the parties. The debtor received most of the community property, including the former marital home located at

12124 East Stillwater, Redding, California (the "residence"), and was ordered to pay to the plaintiff an equalizing payment of $58,058.19.

The award of the residence to the debtor, however, was expressly contingent upon the equalizing payment being paid to the plaintiff. Until paid, record title remained in the name of both parties. If not paid, the superior court retained jurisdiction to compel a sale of the residence.

The superior court found that the residence was worth $190,000.00, and that it was subject to secured debt of $106,147.24. There is no evidence that these amounts have changed significantly.

To date, the residence remains in the name of both parties, the debtor lives in the residence, and the equalizing payment is unpaid. The superior court has taken no further action because of the imposition of the automatic stay occasioned by the filing the chapter 7 petition on May 2, 1997.

The debtor claimed a homestead exemption in the residence in the amount of $69,588.56 under California Code of Civil Procedure § 704.710 *et seq.* No objection to the exemption was filed by the plaintiff or any other party in interest. The time to file objections has expired.

The plaintiff filed a timely dischargeability complaint under 11 U.S.C. § 523(a)(5) and (a)(15). The debtor does not dispute that an obligation to pay $1,500.00 on account of the plaintiff's attorney's fees incurred in the separation proceeding is nondischargeable under 11 U.S.C. § 523(a)(5).

## II. Discussion

The controversy in this proceeding is whether the $58,058.19 equalizing payment is nondischargeable under 11 U.S.C. § 523(a)(15). Section 523(a)(15) provides:

(a) A discharge under section 727 … of this title does not discharge an individual debtor from any debt—

. . . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a

separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

### A.

■ The plaintiff has met her burden of proof under section 523(a)(15). She has established that the $58,058.19 is a nonsupport obligation incurred in connection with a legal separation from her spouse. *Samayoa v. Jodoin (In re Jodoin)*, 196 B.R. 845, 852–54 (Bankr.E.D.Cal.1996), *affirmed,* 209 B.R. 132 (9th Cir. BAP 1997).

### B.

Absent proof by the debtor that he either cannot afford to pay the $58,058.19 or, if he can afford to pay it, that the benefit of a bankruptcy discharge to him outweighs its detrimental consequences to the plaintiff, the equalizing payment is nondischargeable. *Id.* The debtor has not met this burden.

#### 1.

■ The debtor is employed as a logging truck driver. He normally works approximately six months per year and draws unemployment benefits for the rest of the year. His average net income, including unemployment benefits, is approximately $1,875.00 per month. His living expenses average approximately $1,972.00 per month. Were the

debtor a chapter 13 debtor, the court would conclude that he had no disposable income within the meaning of 11 U.S.C. § 1325(b). *Cf. Armstrong v. Armstrong (In re Armstrong)*, 205 B.R. 386, 392 (Bankr.W.D.Tenn. 1996);

While the debtor's employment income and his unemployment benefits are insufficient to permit him to repay the $58,058.19 in the foreseeable future, the residence, if sold, would permit him to pay the plaintiff. Prior to filing bankruptcy, the debtor was not adverse to selling the residence. He sought the permission of the state court to sell the residence but his proposed terms were rejected.

Unsurprisingly, now that the debtor has filed bankruptcy and his former spouse wants him to sell the residence, he refuses to do so. He further maintains that the bankruptcy court cannot consider his equity in the residence when determining whether he can afford to make the equalizing payment because he claimed that equity exempt. Because it is exempt, it cannot be levied upon either during or after the completion of the chapter 7 case. 11 U.S.C. § 522(c).[1]

■ Section 523(a)(15)(A), however, asks whether a debtor has the ability to pay, either from income or property, a nonsupport marital obligation. Exemptions have no impact on what a debtor can afford to pay. Exemptions are only relevant when a creditor seeks to compel a recalcitrant debtor to pay a debt.

For example, if a debtor has $1,000,000.00 in an exempt pension plan, a judgment creditor may not levy on the plan. But this does not mean that debtor is unable to pay the debt. It means he is unwilling to pay it.

More importantly, the reference to property in section 523(a)(15)(A) must necessarily include exempt property. Nonexempt property is property of the bankruptcy estate and subject to sale by the trustee for the benefit of all creditors. A chapter 7 debtor will have only exempt property at his or her disposal. As noted by the bankruptcy court in *Woodworth v. Woodworth (In re Woodworth)*, 187 B.R. 174, 177, n. 1 (Bankr.N.D.Ohio 1995):

Section 523(a)(15)(A) uses the term "income or property of the debtor." This necessarily means exempt property and postpetition income as non-exempt property and prepetition income are property of the estate and cannot be used for debtor's maintenance and support.

*Also see In re Smither*, 194 B.R. 102, 111 (Bankr.W.D.Ky.1996) (exempt property is considered under section 523(a)(15)(B) when balancing the benefit/hardship of a discharge). If the court did not consider exempt property, then, the phrase "or property of the debtor" would be effectively written out of section 523(a)(15)(A).

In many cases, including exempt property in the analysis will benefit the plaintiff little. If a bankruptcy court finds an obligation is nondischargeable based on the existence of exempt property but the plaintiff is prohibited by the section 522(c) from levying upon that exempt property, the court may have handed the plaintiff nothing more than a pyrrhic victory.

In this case, the foresight of the superior court prevents this result. Its award of the residence to the debtor was interlocutory. If the debtor fails to pay the $58,058.19, the superior court retained jurisdiction to make a different division of the parties' community property. This may take the form of order-

---

1. 11 U.S.C. § 522(c) provides: "Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—

(1) a debt of the kind specified in section 523(a)(1) or 523(a)(5) of this title; or

(2) a debt secured by a lien that is—

 (A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and

 (ii) not void under section 506(d) of this title; or

 (B) a tax lien, notice of which is properly filed; or

(3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution-affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution."

ing the sale of the residence and dividing the sale proceeds between the parties.

2.

The debtor made no serious attempt to argue that the benefit of a bankruptcy discharge outweighed its detrimental consequences to the plaintiff.

██ The plaintiff is 51 years old and is totally disabled as a result of a stroke in 1990. She is unable work. Her income consists of $697.00 per month from a private disability insurance policy and $1,035.00 per month from Social Security. The private disability insurance benefit will terminate when she turns 65, at which time she can expect to receive $368.00 per month in pension benefits from her former employer, Pacific Telesis. The plaintiff's living expenses are approximately equal to her income.

Comparatively speaking, the debtor is much more financially secure. As discussed above, he is employable, he has discharged all of his pre-petition debts to other creditors, and he has been conditionally awarded property with an equity exceeding $80,000.00. Consequently, the detriment of the discharge to the plaintiff outweighs its benefit to the debtor.

C.

Having concluded that the debtor's obligation to the plaintiff is nondischargeable, the court is compelled to qualify this conclusion and its judgment. The qualification is necessary because the superior court retained jurisdiction over the community property and could alter its division between the parties.

The superior court's judgment converted the plaintiff's interest in the residence and the other community property into a $58,-058.19 claim against the debtor. A discharge in bankruptcy discharges claims against a debtor unless excepted from discharge. 11 U.S.C. §§ 101(5) & (12), 523(a), 524(a)(1). In this case, the claim will be excepted from the debtor's discharge pursuant to section 523(a)(15).

██ That claim, however, may disappear if the superior court exercises its reserved jurisdiction and alters its judgment. For example, rather than award the residence to the debtor and compel him to pay $58,058.19 to the plaintiff, it may instead order the sale of the residence then divide the sale proceeds between the former spouses.[2] Such a judgment would not create a claim against the debtor. The proceeds from the sale of the residence would represent the plaintiff's interest in property.

A bankruptcy discharge does not extinguish an interest in property. 11 U.S.C. § 727(b). See Gendreau v. Gendreau (In re Gendreau), 122 F.3d 815, 818–819 (9th Cir. 1997). Such a situation would be analogous to Chandler v. Chandler (In re Chandler), 805 F.2d 555, 557–558 (5th Cir.1986). In Chandler, the court held that an obligation to turnover proceeds of retirement pay representing ex-wife's former community property interest was an obligation to turnover her sole property and was not a dischargeable debt. Also see Aldrich v. Imbrogno (In re Aldrich), 34 B.R. 776, 780 (9th Cir. BAP 1983).

Therefore, if the superior court alters its present division of community property and eliminates any requirement that the debtor pay money to the plaintiff, there will be no debt to be discharged. The plaintiff's right to receive community property or her share of the net proceeds from a court ordered sale is an interest in property that is not capable of discharge.

---

2. In fulfilling its obligation to divide community property equally between the former spouses, the superior court may award an asset to one party on "such conditions as it deems proper". Cal. Family Code § 2601. Such conditions may include an award to the other party of a greater share of other community property or of a cash payment in lieu of his or her community property interest in the asset. Alternatively, the court may divide the asset in kind, or order the asset sold and the net equity divided between the parties. In re Marriage of Brigden, 80 Cal.App.3d 380, 390, 145 Cal.Rptr. 716 (1978); In re Marriage of Davis, 68 Cal.App.3d 294, 306, 137 Cal. Rptr. 265 (1977); Cal. Family Code § 2553. The superior court may retain jurisdiction to divide an asset at a later date. Cal. Family Code § 2550.

### III. Conclusion

For the foregoing reasons, the court will enter a judgment in favor of the plaintiff and against the debtor providing that his obligation to pay $1,500.00 to the plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(5). The judgment will also provide that the debtor's obligation to pay $58,058.19 to the plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(15). However, if the superior court alters its division of community property so as to eliminate any requirement that the debtor pay this amount, then there is no debt to discharge. This may occur if the superior court orders the sale of the residence and then divides the net sale proceeds between the parties. An award to the plaintiff of a portion of the net proceeds represents her interest in property. Her interest in property is unaffected by the debtor's discharge.

A separate judgment will be entered.